THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAN MACLEOD, BY AND THROUGH THE EXECUTOR OF HER ESTATE, JENNY BROOK, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED<br><br>*Plaintiff*<br><br>vs.<br><br>JENNER'S POND, INC. d/b/a, a/k/a JENNER'S POND RETIREMENT COMMUNITY<br><br>And<br><br>SIMPSON SENIOR SERVICES<br><br>*Defendants* | No. 2:20-cv-03485-ER<br><br><br>JURY TRIAL DEMANDED |

## **FIRST AMENDED CLASS ACTION COMPLAINT**

1.      Plaintiff Jan MacLeod, by and through the Executor of her estate, Jenny Brook, brings this action on behalf of herself and former residents of Jenner's Pond senior living community who were charged a "market upgrade" in violation of the terms of their agreements.

2.      Jenner's Pond is a senior living community that is owned and operated by Defendant Simpson Senior Services. Elderly residents who reside at Jenner's Pond enter into a form agreement  pursuant to which the residents agree to pay hundreds of thousands of dollars in entrance fees to reside in the Jenner's Pond community, and to receive a partial refund of the entrance fees upon resale of the residents' units after they move out of Jenner's Pond.

3.    In violation of that agreement, however, a so-called "Market Upgrade" fee is deducted from the refund payments to these residents even though the form agreement does not provide for the deduction of such "Market Upgrades".

4.    As set forth below, a "Market Upgrade" in excess of $100,000 was deducted from the Plaintiff's refund payment.

5.    This action brings claims on behalf of former residents of Jenner's Pond to recover damages owed to them based upon the improper deduction of such "Market Upgrades" from the residents' refund payments.

## THE PARTIES

6.    At the time the initial Complaint was filed,  Plaintiff Jan MacLeod, was a citizen of the State of Missouri, residing at the above-captioned address. On August 23, 2020 Jan MacLeod passed away, and Jenny Brook is serving as the Executor of her estate.

7.    Defendant, Jenner's Pond, Inc., d/b/a Jenner's Pond Retirement Community, is incorporated under the laws of the Commonwealth of Pennsylvania. Jenner's Pond Inc. is a subsidiary of and owned, controlled and operated by Defendant Simpson Senior Services.

8.    Defendant, Simpson Senior Services is incorporated under the laws of the Commonwealth of Pennsylvania. Simpson Senior Services is the parent company over Defendant Jenner's Pond Inc.

9.    Upon information and belief, Defendants regularly and systematically conduct business within the Commonwealth of Pennsylvania and Philadelphia County.

10.    Defendant Senior Simpson Services owns, controls and operates senior-living communities, including Jenner's Pond.

11.     The Jenner's Pond facility is located at 2000 Greenbriar Lane, West Grove, Chester County, Pennsylvania 19390.

## **FACTUAL ALLEGATIONS**

12.     On February 21, 2007, Plaintiff, seeking to join the Jenner's Pond facility, entered into a form, written Continuing Care Agreement ("Agreement").

13.      The Agreement provided for her to reside in a Jenner's Pond facility apartment, unit 1108, in exchange for monthly service fees, as well as an "Entrance Payment" in the sum of $290,000. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

14.     The Agreement provides that when residents leave, the residents or their estate must receive a refund of at least 50% of the resale value of the unit, based upon a formula included in the Agreement. Ex. A at Section XIII (B)(2) and (B)(3).

15.     The Agreement further provides for a deduction from the refund of any necessary "maintenance, repairs or replacements" to the units. Ex. A at XIII (B)(6).

16.     The Agreement did not permit or even discuss a deduction for the expenses of any "Market Upgrade" from the resale value.

17.     When residents leave or pass away, residents are forced to rely and thus are fully dependent on Defendants to resell their unit in good faith and maximize any refund.

18.     In December 2018, Plaintiff moved out of the Jenner's Pond facility.

19.     In March 2019, her unit was resold for the amount of $360,000.

20.     Pursuant to Section XIII (B)(3) of the Agreement, Jenner's Pond is required to pay Jan MacLeod $180,000, representing 50% of the resale value.

21.    However, Defendants sent Plaintiff a check in the amount of only $124,377.00, rather than $180,000.

22.    When questioned about the failure to pay 50% of the resale value as required by the Agreement, Defendants stated, "We deducted the market upgrades ($111,247.00) from the sale price of $360,000 which gave us the resale value of $248,753.00. The refund amount is $124,377.00 which is based on 50% of the resale value." Emails, Ex. B at 2-3. Defendants further stated that this "process for calculating the resale value and refund is the same process we have used for former residents when they vacated their apartment or cottage." Ex. B at 1.

23.    Defendants' common practice of deducting these "Market Upgrades" from residents' refunds is embedded into Defendants' bookkeeping, which expressly accounts for the "Market Upgrades" in a Revenue Tracker. Refurb Expense/ Revenue Tracker, Ex. C at 3.

24.    The Agreement does not provide for Defendants to deduct "Market Upgrades" from residents' refund payments. Indeed, the term "Market Upgrade" does not appear anywhere in the Agreement.  The contract only permits deduction of "necessary maintenance, repairs, and replacements".

25.    As a result of this practice, Defendants effectively and routinely impose their own capital improvement costs upon the former residents, in violation of the terms of their form Agreements.

26.    As described by Simpson, Jenner's Pond Inc. is a "Simpson Community." *See* https://www.simpsonsenior.org/communities/.

27.    In addition, Senior Simpson Services engages in "[c]areful oversight" over Simpson Communities, including Jenner's Pond Inc. *See* https://www.simpsonsenior.org/about/. Effectively, Simpson exercises direct control over the day-to-day operations at all of its Communities.

28.    Furthermore, Simpson's response to COVID-19 provides a recent example of this intricate and broad control. Since early 2020, the Simpson President, Carol McKinley, has been sending out monthly updates on Simpson letterhead to residents of its Communities—including those at Jenner's Pond. A true and accurate copy of the May through August 2020 notices is attached hereto as Exhibit D. Those letters indicate that Simpson has been managing the COVID-19 response amongst all of its communities, including by housing infected persons at the "Simpson House COVID Center" and engaging a "Simpson COVID Task Force" to manage the response at all Simpson communities.

29.    Simpson also communicates directly with its residents in other regularly updated fora. For example, the resource guide for all residents of Simpson communities is on Simpson letterhead and linked on the home page of the Jenner's Pond website as a resource for residents there. *See* https://www.jennerspond.org/news/resource-guide/.

30.    Furthermore, Simpson exercises control over staffing at its Communities, including by using Simpson employees to fill Jenner's Pond vacancies, as well as filling key positions such as the Director of Residential and Home Care Services at Jenner's Pond.

31.    On information and belief, it is Simpson's routine business practice to review and approve the accounting that results in the reduced refund payments to Jenner's Pond residents. *See* Ex. B at 1-2.

32.    On information and belief, it is Simpson's routine business practice to approve the amount of the refund check issued to residents and represented by Defendants as 50% of the calculated "resale value." *See* Ex. B at 1-2.

33.    As set forth in the email exchanges regarding Plaintiff's refund payment, Simpson exercises direct control over Jenner's Pond's policies and practices regarding the deduction of "Market Upgrades" from the "Resale Value" which are the focal point of this action. On information and belief, Simpson Senior Services is the "corporate" entity in the emails as being responsible for approving, processing and issuing the refund payments made to Jenner's Pond residents, as set forth in Exhibit B.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action on behalf of herself and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Class:

> **All former residents of Jenner's Pond, whose refund payments were reduced by a "Market Upgrade".**

35.    This action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a).

a.    The Class is numerous enough such that joinder of all Class Members is impracticable. The number of class members would be each resident whose unit was sold and whose refund was reduced due to a "Market Upgrade". Additionally, in some instances, such persons may have sustained damages in amounts too small to justify the expense and effort required to bring individual lawsuits. These damages, addressed collectively through the class action mechanism, are substantial enough to justify legal action.

b.    There are questions of law or fact common to the Class members regarding Defendants' practice of deducting "Market Upgrades" from refunds. The predominant common questions of law and fact include, but are not limited to:

      i.   The construction of the Agreements;

      ii.  Information provided to Class members at the time of purchase;

      iii. Information provided to Class members at the time of sale;

      iv.  Whether Defendants' common practice of charging former residents for "Market Upgrades" breached the Agreements;

      v.  Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

      vi.  Any potential defenses that Defendants may assert.

   c.  The claims of Plaintiff are typical of, if not identical to, the claims of the members of the Class because they are based on the same legal theories and arise from the same or a similar Agreement.

   d.  The Plaintiff will fairly and adequately assert and protect the interests of the Class; Plaintiff has retained competent counsel experienced in class actions and complex litigation, there no conflicts of interest with the Plaintiff or the Class, and there are financial resources sufficient to assure that the interests of the Class will not be harmed.

36.    A class action provides a fair and efficient method for adjudication of this controversy under the criteria of Rule 23(b)(3):

   a.  Common questions of law and fact predominate over any questions affecting individual members, as this litigation concerns the conduct of Defendants.

   b.  The Class is so numerous that joinder is impracticable.  Still, there are no unusual legal or factual issues which would cause management problems not normally and/or routinely handled in class actions.

   c.  The prosecution of separate actions by individuals against Defendants would create a risk of inconsistent or varying adjudications. Defendants could be confronted with inconsistent standards of conduct if separate actions were allowed to proceed and former residents could face inconsistent damages findings. Moreover, adjudications with respect to individual members of the class, particularly legal adjudications related to contractual interpretation, would as a practical matter be dispositive to the interests of other members not party to the adjudication.

d. There does not appear to be any litigation already commenced involving these refunds.

e. This forum is appropriate for the litigation of all claims of the Class because Defendants regularly conducted and continue to conduct business and engaged and continue to engage in the conduct at the center of this litigation at their Simpson House facility, located in Philadelphia County.

f. The amount which may be recovered by individual Class members justifies the expense and effort of administering the action.

g. In deducting "Market Upgrades" from refunds, Defendants have acted on grounds generally applicable to the Class, making final equitable or declaratory relief appropriate.

37.    Absent a class action, the Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of Defendants' conduct and the claims they possess.

## COUNT I- BREACH OF CONTRACT

38.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

39.    Plaintiff and all members of the Class entered into the same written Agreement.

40.    At all times relevant hereto, the Agreement was in full force and effect.

41.    Defendants breached the Agreement and other promises made to Plaintiff and all members of the Class when, as described in detail above, Defendants deducted "Market Upgrades" from Class members' refunds and failed to fully reimburse Class members consistent with the terms of the Agreement.

42.    Plaintiff and all members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

43.    Plaintiff and all members of the Class have sustained damages as a result of Defendants' breach of the contract described above

**WHEREFORE**, Plaintiff on behalf of herself and the class of similarly situated individuals she seeks to represent, demands the following:

(A) That this Court certify the class described above;

(B) That judgment be entered in favor of Plaintiff and against Defendants for all compensatory losses and damages allowed by law;

(C) An award of pre- and post-judgment interest for delay damages be entered in Plaintiffs' favor;

(D) That the Court award Plaintiffs attorneys' fees, costs and expenses of litigation against Defendants; and

(E) Any other such relief this Court deems just and appropriate.


Dated: October 12, 2020                                Respectfully submitted,

                                                       */s/Richard E. Shevitz*
                                                       Richard E. Shevitz
                                                       Lynn A. Toops
                                                       **COHEN & MALAD, LLP**
                                                       One Indiana Square, Suite 1400
                                                       Indianapolis, IN 46204
                                                       (317) 636-6481
                                                       rshevitz@cohenandmalad.com
                                                       ltoops@cohenandmalad.com


                                                       Elizabeth A. Bailey
                                                       **SALTZ, MONGELUZZI, BARRETT, &**
                                                       **BENDESKY, P.C.**

One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 575-3859
ebailey@smbb.com

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a true and correct copy of Plaintiffs'

First Amended Class Action Complaint was served via electronic filing upon the following:

Glenn R. Davis
Kimber L. Latsha
Brian A. McCall
Latsha Davis & Marshall, P.C.
1700 Bent Creek Boulevard, Suite 140
Mechanicsburg, PA 17050
*Attorneys for Defendants*

Dated: October 12, 2020                      */s/ Richard E. Shevitz*
                                             Richard E. Shevitz